FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB 15 PM 4:55

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN EDMOND MAYES** | CIVIL ACTION |
| **VERSUS** | NO: 04-1572 |
| **JACK STRAIN, JR., ET AL** | SECTION: "J" (4) |

### ORDER AND REASONS

The defendant, Detective James McIntosh, filed a **Motion for Summary Judgment (Rec. Doc. No. 40)** seeking dismissal of the plaintiff's medical indifference claims against him. McIntosh argues that he was not indifferent to the plaintiff's serious medical needs nor did he deny him needed medical care. The plaintiff, Kevin Edmond Mayes, also filed a **Motion for Summary Judgment (Rec. Doc. No. 42)** in which he argues that the medical indifference issue is not ripe for summary dismissal. Prior to the filing of these motions, on August 19, 2004, the Court held a hearing pursuant to *Spears v. McCotter*[1] and its progeny with the *pro se* plaintiff and counsel for the defendants participating by conference telephone call.[2] This matter is now before the Court upon consent of the parties pursuant to Title 28 U.S.C. § 636(c).

---

[1] 766 F.2d 179 (5th Cir. 1985).

[2] Rec. Doc. No. 15. The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991). The plaintiff was sworn prior to testifying. The cassette tape recording of the hearing is in the custody of the Court Reporting Unit.

___ Fee_____
___ Process____
_X_ Dktd_____
___ CtRmDep___
___ Doc. No___

I.  **Factual Summary**

A.  **The Original Complaint**

Mayes originally filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against St. Tammany Parish Sheriff Rodney "Jack" Strain, Jr., Warden Marlin Peachey, Dr. Peter Galvin, Parole Officer Mike Phelps, Detective James McIntosh, Detective Chris Vicari, Lakeview Regional Medical Center, and unnamed sheriff's deputies.

In his complaint, Mayes alleges that the St. Tammany Narcotics Division beat him with flashlights and pistols on February 19, 2004. He further alleges that he was taken to the Lakeview Regional Medical Center for injuries received during the beating.

Mayes claims that he was given a tetanus shot at the hospital because a nail pierced his head. He also claims, however, that he was taken out of the hospital before he could be checked for fractures to his face and head.

Mayes alleges that he was taken to a holding cell at the St. Tammany Parish Jail where he remained for six days with no follow-up medical care for his severe injuries. He claims he developed an abscess in his jaw from an infection resulting from a cut on his chin. He also asserts he received no medical attention until he was moved to a regular dormitory at the prison.

Finally, Mayes alleges that he began suffering from dizzy spells and head pains. He seeks to have his injuries examined and treated, and requests monetary damages.

B.  **The *Spears* Hearing**

At the *Spears* Hearing, Mayes testified that the altercation with the narcotics officers occurred on February 19, 2004. He stated that he was at his sister's house sitting in a room when

masked men entered the house and placed a gun in his face. Mayes stated that he told the masked men that he and his sisters were not on parole. He was then struck from behind.

He testified that he was hit fourteen or fifteen times by flashlights and other weapons and while he was bleeding, the officers picked him up off of the floor and took him out of the house to a Sheriff's car. He further testified that the officers drove him to Lakeview Regional Medical Center, where they asked him a lot of questions. According to Mayes, the officers charged him with possession of drugs while he was being transported to the hospital.

He also testified that Lakeview Regional Medical Center did not provide him with adequate care because they only treated him for one injury and not the other injuries he sustained. He stated that after arriving at the St. Tammany Parish Jail, he was placed in a holding tank for ten days. Mayes claims that his wounds continued to bleed but his requests for medical treatment were ignored. He stated that the prison doctor only provided him with aspirin.

He also testified that, at the time of this incident, he was on parole for aggravated flight and for possession of stolen property. Mayes stated that he was arraigned on the new charge of possession with the intent to distribute marijuana. He also was arrested for several charges of battery of a police officer and resisting arrest, but does not recall being arraigned on those charges.

Mayes testified that as a result of these incidents, he filed grievances and turned them over to Captain Longino at the St. Tammany Parish Jail. He also recalled speaking with Internal Affairs.

He also testified during the *Spears* Hearing that he filed suit against Detective McIntosh, one of the arresting officers, because McIntosh told the nurse at the hospital to make Mayes's injuries "look clean." Mayes alleged that that the nurse nodded and agreed. McIntosh, according to Mayes, tried to get him to state that he was not really injured. He testified that McIntosh coerced

3

the nurse into modifying the nature of his medical condition on the paperwork and to classify his injury as a minor puncture wound.

He further testified that he filed suit against Detective Vicari because he participated in the beating. Mayes recalled that Vicari struck him in the head. Mayes also filed suit against Parole Officer Phelps because he initiated the beating.

## II.   Procedural Background

On March 30, 2005, the Court issued an order granting several motions to dismiss and completed its frivolous review of the claims. The March Order dismissed the claims against Dr. Galvin and Mike Phelps because Mayes failed to exhaust administrative remedies. The March Order dismissed the claims against the hospital, Sheriff Strain, and Warden Peachey as frivolous and otherwise for failing to state a claim for which relief can be granted. The March Order also dismissed the excessive force claims against Vicari and McIntosh pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), because Mayes testified that he had charges pending against him for battery on these officers. The Court retained the medical indifference claims against Officer McIntosh because they were not subject to dismissal as frivolous.

On July 12, 2005, Mayes filed a Motion for Reconsideration (Rec. Doc. No. 39) in which he alleged that the excessive force claims against McIntosh and Vicari should be reinstated because there were no pending charges against him for battery on a police officer and the *Heck* prohibition was no longer applicable. He attached a letter from the Clerk of the 22nd Judicial District Court in support of his claims. Considering the new and clarified information, the Court granted the motion and reinstated the excessive force claims against Vicari and McIntosh.

Now pending before the Court, and scheduled for jury trial on September 11, 2006, are the excessive force claims against Vicari and McIntosh, and the medical indifference claims against McIntosh.

### III. Motions for Summary Judgment

Detective McIntosh has filed a motion for summary judgment contending that he was not indifferent to Mayes's medical needs. In support of his motion, he submits his affidavit, the transcription of an interview of Mayes by Major Phillip Casnave and Lt. Linda Husser, a copy of the Lakeview Regional Medical Center's report of February 19, 2004, and the Acadian Ambulance Service records. McIntosh contends that these documents establish that he was not indifferent to Mayes's serious medical needs and that he is entitled to judgment as a matter of law. Specifically, McIntosh attests that he took Mayes to the hospital for the treatment of two nail wounds to his head and that those wounds were in fact treated before he was transported to the prison.

Mayes also filed a cross motion for summary judgment as his opposition to the McIntosh's motion. In his motion, Mayes contends that he is entitled to judgment, or that McIntosh is not, on the issue of McIntosh's medical indifference because McIntosh falsified the documents and records used to support his motion. He claims in his affidavit that McIntosh prepared or told the nurse to prepare the paperwork at the hospital to hide the severity of the injuries received, i.e. his swollen eye, from the alleged beating by the officers.

### IV. Standards of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there are any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

V.  **Analysis**

McIntosh contends that the summary judgment evidence shows that he evaluated Mayes's injuries and summoned medical treatment for him. He argues, and the record shows, that he immediately summoned an ambulance to the scene and Mayes was treated by the emergency medical technician of Acadiana Ambulance. Mayes was then transported to Lakeview Regional Medical Center where he was provided medical treatment for his puncture wounds to the head. Mayes also received medical treatment from Medical Center of Louisiana at New Orleans ("MCLNO") (f/k/a Charity Hospital) on another occasion. McIntosh argues that these facts and supporting evidence establish that he was not indifferent to Mayes's serious medical needs.

In considering the degree of medical care due prisoners, federal courts apply the same standard to both arrestees and pretrial and convicted inmates. *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 650 (5th Cir. 1996). The standard of conduct imposed on defendants with respect to the medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 97, 104; *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999) (*quoting Estelle*, 429 U.S. at 104); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999). Section 1983 permits recovery for serious physical harm "only where the defendant acts intentionally" or with an analogous state of mind usually described as "deliberate indifference" to deprivation of the victim's constitutional right. *See Manarite v. City of Springfield*, 957 F.2d 953, 955 (1st Cir.), *cert. denied*, 506 U.S. 837 (1992) (citing *Canton v. Harris*, 489 U.S. 378, 388-390 (1989)) (discussing deliberate indifference

standard in Fourteenth Amendment municipal liability, police denial of medical treatment case). The Supreme Court defined the "deliberate indifference" to mean that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *Stewart*, 174 F.3d at 534; *Reeves*, 27 F.3d at 176; *see also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). "Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Bradley*, 157 F.3d at 1025.

In some circumstances, even a delay in providing needed medical treatment may amount to a constitutional violation. *See Benson v. Cady*, 761 F.2d 335 (7th Cir. 1985); *Duncan v. Duckworth*, 644 F.2d 653 (7th Cir. 1981). However, the delay must be caused by the defendant's deliberate indifference if it is to rise to the level of a constitutional violation. *See Estelle*, 429 U.S. at 104-05.

Therefore, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104.

However, a complaint that a physician, medical care provider, or other official has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id.* An inmate's disagreement with his medical treatment does not give rise to a constitutional claim under § 1983. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) (noting that "[i]t is clear that negligent medical

8

treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) (concluding that "mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983" (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In support of his motion, Detective McIntosh states in a statement attached to his affidavit that he and other detectives were conducting a narcotics investigation in Abita Springs involving a man identified as Bennie Mayes. (Def. Aff. 2). While conducting a probation check of Bennie Mayes's home, they came upon Kevin Mayes in the house. *Id.* McIntosh states that he advised Mayes that they were from the Sheriff's Office and Mayes refused to comply with their instructions. *Id.* McIntosh also states that Mayes attempted to flee by attempting to open a window with his right hand. *Id.* Detective Powe grabbed Mayes's left arm and McIntosh grabbed his right arm. *Id.*

McIntosh stated that Mayes refused to comply and violently resisted by attempting to pull away from the detectives. *Id* at 3. McIntosh concedes that he struck Mayes in the triceps area with his flashlight in an effort to assist another detective in removing Mayes's hand from his pocket. *Id* at 4. The officers were able to secure Mayes's hands and place them behind his back. *Id.* While doing so, Mayes continued struggling and complaining that something was poking him in the head. *Id.* McIntosh observed blood coming from Mayes's head, just behind his left ear. *Id.* The officer observed that Mayes was laying on a pile of loose nails and boards with protruding nails. *Id.*

McIntosh states that they evaluated Mayes's injuries and called an ambulance. *Id.* Mayes was placed in the police vehicle until the ambulance arrived one hour later. *Id* at 5. McIntosh indicates that when the ambulance arrived, Mayes was treated at the scene and transported to Lakeview Regional Medical Center where he was further treated for two puncture wounds to the left

side of his head. *Id.* Mayes was released from the hospital after treatment and taken by police to the St. Tammany Parish Jail. *Id.*

The records also reflect that Mayes gave a statement to the police on June 7, 2004. (Def. Ex. B). In the statement, Mayes's account of what happened was starkly different from that of Detective McIntosh.

Mayes indicated that he was at his sister's house cutting hair when he was approached by men with guns who advised him that they were conducting a parole check. *Id.* Mayes told them that he was not on parole. *Id.* He then stated that he was then struck in the back of the head several times which caused him to fall to the floor in a pool of blood. *Id.* He further stated that he was rushed into a patrol car. *Id.* He also stated that, after they placed him in the sheriff's car, he screamed that his head was bleeding from the back. *Id.* He stated that the ambulance arrived fifteen minutes later and he was placed onto a stretcher. *Id.*

Mayes further claimed in the statement that he was transported to Lakeview Regional Medical Center. *Id.* at 2. He stated that the detectives told the treating physician to hurry and make to make it look good. *Id.* Mayes indicated that the detectives also tried to get him to sign a statement while he was handcuffed to the hospital bed. *Id.* He further stated that, after he was released from the hospital and taken into St. Tammany Parish Jail he only received medical treatment on two occasions when a nurse came to check on him. *Id.* at 8. He also indicated that the nurse gave him Tylenol. *Id.* In addition, after the prison medical personnel found out that he had an abscess, they did not change their course of treatment until sometime in May. *Id.* at 8-9.

Mayes stated that the abscess on his face cleared but the puncture wounds on his head became irritated. *Id.* at 9. He stated that the medical staff only provided him with Tylenol and took him to MCLNO. *Id.* They also gave him a tetanus shot. *Id.*

The hospital records confirm that, on the date of the incident, Mayes was treated in the emergency room for puncture wounds to the back of his head. (Def. Ex. C). The records also noted that he experienced swelling above his left eye. *Id.* The records also show that medication was ordered and Mayes was taken to radiology for a CT scan and X-rays. *Id.* The medical records further show that Mayes admitted to alcohol and marijuana use. *Id.* The hospital physician prescribed Keflex, an antibiotic, during the visit and provided him with instructions on wound care. *Id.*

The affidavits and medical records show that McIntosh was not deliberately indifferent to Mayes's serious medical needs and that the hospital indicated that his eye was swollen. It is not refuted that Mayes was injured during the officers' attempt to detain him. This is in fact the subject of the excessive force claims pending for trial. The issue in this motion is strictly medical indifference by McIntosh. The medical records, including the ambulance report, confirm that Mayes received prompt attention to his wounds at the scene and at Lakeview Regional Medical Center. He received treatment for blunt trauma to the head and eye and puncture wounds. He was given antibiotics and evaluated by CT scan and X-rays.

Further, Mayes conceded in his statement that he saw a nurse twice while he was in the holding cell after his arrival at the prison. He also attested that the nurse administered Tylenol to him for the pain. Mayes also acknowledged that the nurse did not know, and he may not yet have

had an abscess on his head. H confirmed that, upon discovery of the abscess, he was transported to MCLNO for treatment and he ultimately received more antibiotics to treat the condition.

The court finds that the summary judgment evidence confirms that Mayes's was provided with prompt and complete medical care. Mayes has not established by competent evidence that McIntosh did anything to restrict the care he received or that McIntosh was intentionally indifferent to a serious medical need. There are no genuine issues of fact on this issue and McIntosh is entitled to judgment as a matter of law. For these reasons, Mayes's medical indifference claims against McIntosh must be dismissed with prejudice. Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Rec. Doc. No. 40) filed by the defendant, Detective James McIntosh, seeking dismissal of plaintiff's medical indifference claims against him is **GRANTED** and the plaintiff's medical indifference claims against Detective McIntosh are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment (Rec. Doc. No. 42) filed by the plaintiff, Kevin Edmond Mayes, is **DENIED.**

The plaintiff's excessive force claims against defendants Vicari and McIntosh shall remain for jury trial on September 11, 2006 as scheduled.

New Orleans, Louisiana, this 16th day of February, 2006

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE