UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN EDMOND MAYES** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-1572** |
| **SHERIFF JACK STRAIN, JR., ET AL** | **MAGISTRATE JUDGE KAREN WELLS ROBY** |

## ORDER AND REASONS

The defendants, Detectives James McIntosh and Chris Vicari , filed a **Motion for Summary Judgment (Rec. Doc. No. 59)** seeking dismissal of the plaintiff's excessive force claim. This matter is now before the Court upon consent of the parties pursuant to Title 28 U.S.C. § 636(c).

**I.     Factual Summary**

    **A.     Original Complaint**

Mayes originally filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against St. Tammany Parish Sheriff Rodney "Jack" Strain, Jr., Warden Marlin Peachey, Dr. Peter Galvin, Parole Officer Mike Phelps, Detective James McIntosh, Detective Chris Vicari, Lakeview Regional Medical Center, and unnamed sheriff's deputies.

In his complaint, Mayes alleges that the St. Tammany Narcotics Division beat him with flashlights and pistols on February 19, 2004. He further alleges that he was taken to the Lakeview Regional Medical Center for injuries received during the beating.

Mayes claims that he was given a tetanus shot at the hospital because a nail pierced his head. He also claims, however, that he was taken out of the hospital before he could be checked for fractures to his face and head.

Mayes alleges that he was taken to a holding cell at the St. Tammany Parish Jail where he remained for six days with no follow-up medical care for his severe injuries. He claims he developed an abscess in his jaw from an infection resulting from a cut on his chin. He also asserts he received no medical attention until he was moved to a regular dormitory at the prison.

Finally, Mayes alleges that he began suffering from dizzy spells and head pain. He originally sought to have his injuries examined and treated, and requests monetary damages.

**B.**     *Spears* **Hearing**

At the *Spears*[1] Hearing held August 19, 2004,[2] Mayes testified that the altercation with the narcotics officers occurred on February 19, 2004. He stated that he was at his sister's house sitting in a room when masked men entered the house and placed a gun in his face. Mayes stated that he told the masked men that he and his sisters were not on parole. He was then struck from behind.

He testified that he was hit fourteen or fifteen times by flashlights and other weapons and while he was bleeding, the officers picked him up off of the floor and took him out of the house to a Sheriff's car. He further testified that the officers drove him to Lakeview Regional Medical Center, where they asked him a lot of questions. According to Mayes, the officers charged him with possession of drugs while he was being transported to the hospital.

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2]See Rec. Doc. No. 15. The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991). The plaintiff was sworn prior to testifying. The cassette tape recording of the hearing is in the custody of the Court Reporting Unit.

He also testified that Lakeview Regional Medical Center did not provide him with adequate care because they only treated him for one injury and not the other injuries he sustained. He stated that after arriving at the St. Tammany Parish Jail, he was placed in a holding tank for ten days. Mayes claims that his wounds continued to bleed but his requests for medical treatment were ignored. He stated that the prison doctor only provided him with aspirin.

He also testified that, at the time of this incident, he was on parole for aggravated flight and for possession of stolen property. Mayes stated that he was arraigned on the new charge of possession with the intent to distribute marijuana. He also was arrested for several charges of battery of a police officer and resisting arrest, but does not recall being arraigned on those charges.

Mayes testified that as a result of these incidents, he filed grievances and turned them over to Captain Longino at the St. Tammany Parish Jail. He also recalled speaking with Internal Affairs.

He also testified during the *Spears* Hearing that he filed suit against Detective McIntosh, one of the arresting officers, because McIntosh told the nurse at the hospital to make Mayes's injuries "look clean." Mayes alleged that that the nurse nodded and agreed. McIntosh, according to Mayes, tried to get him to state that he was not really injured. He testified that McIntosh coerced the nurse into modifying the nature of his medical condition on the paperwork and to classify his injury as a minor puncture wound.

He further testified that he filed suit against Detective Vicari because he participated in the beating. Mayes recalled that Vicari struck him in the head. Mayes also filed suit against Parole Officer Phelps because he initiated the beating.

**II.     Procedural Background**

On March 7, 2005, the undersigned issued a Report and Recommendation in keeping with her statutory duties to review prisoner claims to determine if they state a claim for which relief may be granted. In connection with the request, the undersigned determined, and the district judge affirmed, that the claims against Warden Peachey, Sheriff Rodney Jack Strain, Jr., and Lakeview Medical Center be dismissed because there were no claims asserted against them for which relief could be granted. It was further determined that the medical indifference claims against McIntosh should proceed forward for further review. (*See* Rec. Doc. No. 31).

On July 22, 2005, Officer McInstosh filed a Motion for Summary Judgment seeking dismissal of the medical indifference claim pending against him. The Court, after considering the law and the evidence, determined that the claim should be dismissed on February 15, 2006. (*See* Rec. Doc. No. 6).

On July 12, 2005, Mayes filed a motion to reconsider the dismissal of his excessive force claims because he had secured proof that the charges of assault and battery against the police officers, which were submitted by the arresting officers, were not accepted by the District Attorney. As a result, Mayes argued that the *Heck* bar no longer applied and that he should be allowed to proceed forward on his excessive force claim against Officers Vicari and McIntosh. On February 6, 2006, the undersigned considered the motion and found that Mayes was accurate, thereby reinstating the excessive force claims against Vicari and McIntosh.

The remaining defendants, Vicari and McIntosh, have submitted the subject motion and advance two separate grounds for dismissal. First, Vicari contends that the claims against him should be dismissed because he was not present during the arrest and was actually occupied with

other duties. Second, McIntosh contends that the force he used in detaining and arresting Mayes was justified under the circumstances. Having set forth the position of the parties, the Court will proceed with its review of the matter.

### III.     Standards of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there are any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

## IV.   Analysis

### A.   Claim against Detective Vicari

Vicari contends that the excessive force claim filed by Mayes against him should be dismissed because he was not present at the time of the arrest. In fact, Vicari contends that (1) he did not participate in the arrest and (2) he was occupied with other duties. Therefore, he argues that there is no genuine question of material fact and the claim should be dismissed.

Mayes contends that the Motion should be denied because there are contradictions and falsifications. His affidavit suggests that the contentions, although not specifically addressed, are contradicted.

The record shows that Vicari is entitled to judgment as a matter of law. The opposition filed by the plaintiff solely responds to the effort to dismiss the claim against McIntosh. Neither Mayes's affidavit nor his testimony provided during the *Spears* Hearing suggest that Vicari was involved in the events of which he complains. Further, Vicari's affidavit indicates that he was not working with the Narcotics Detectives on the date of Mayes's arrest. (Def. Ex. A, Affidavit. of Vicari). He further states that not only was he not involved in Mayes's arrest but he also had nothing to do with his incarceration in the St. Tammany Parish Jail. *Id.* at 2.

Vicari further states that he was working as a property detective in Covington on the date and time of the arrest. He states that a large part of his day was spent investigating a burglary of the Pier One Store in Covington, Louisiana, and searching the woods behind the Wendy's in Covington. *Id.* at 3. He further indicates that after conducting the burglary investigation of the store, he went to his home in Folsom, Louisiana, where he stayed the remainder of the night. *Id.* at 3. Therefore, the Court finds that the excessive force claim filed against Detective Chris Vacari must be dismissed with prejudice as a matter of law as there is no genuine issue of material fact regarding whether Vicari used excessive force during the Mayes's arrest.

**B.     Claim against Detective McIntosh**

McIntosh contends that, as a matter of law, the excessive force claim should be dismissed with prejudice because the amount of force used was justified. He further contends that he is entitled to qualified immunity because the amount of force he used was necessary to maintain control of a "possibly" volatile situation. He contends that because the force he used was not used maliciously or sadistically that he is qualifiedly immune as a matter of law.

Excessive force claims that arise in the context of an arrest or seizure invoke the protection of the Fourth Amendment right to be free from "unreasonable" seizures. U.S. Const. amend. IV; *see Graham v. Connor,* 490 U.S. 386, 394 (1989). Whether the amount of force used in a seizure or arrest is excessive is analyzed under the Fourth Amendment's "objectively reasonable standard," which requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *See Id*., at 396.

The fact-specific inquiry considers (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers and others, and (3) whether the suspect is actively resisting arrest or attempting to escape. *See Id.* Although these factors guide the reasonableness analysis, they are not exclusive and are not to be applied mechanically. *See Id.* Further, the reasonableness standard must be applied objectively in that the facts are viewed from the perspective of the officer at the time of the incident rather than in hindsight, and without examining the officer's underlying intent or motivation. *See Id.*, at 397.

The summary judgment evidence in this case illustrates that the parties give very differing views of the events at issue. On the one hand, McIntosh indicates that he was trying to assist two other detectives in detaining Mayes when they fell into a pile of debris and nails. Mayes contends that when McIntosh entered the room, he had already been handcuffed by the other two officers. He claims that McIntosh beat him and that he purposefully placed Mayes's head in the nails and debris to cause him injury. Additionally, there are two versions of the incident attributable to or seemingly prepared by McIntosh on the same day and these accounts are somewhat factually different.

For these reasons, Mayes's excessive force claim against McIntosh should proceed forward because there are genuine issues of material fact preventing summary judgment and McIntosh has not established that he is qualifiedly immune as a matter of law. Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. No. 59)** filed by the defendants, Detectives James McIntosh and Chris Vicari, seeking dismissal of plaintiff's excessive force claims against them is **GRANTED IN PART** as to the claims against Detective Chris Vicari and **DENIED IN PART** as to the claims against Detective McIntosh.

**IT IS FURTHER ORDERED** that the claims against Detective Vicari are **DISMISSED WITH PREJUDICE** having granted summary judgment in his favor.

New Orleans, Louisiana, this ___7th___ day of September, 2006

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**